IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AKEEM HUTCHINSON,<br><br>    Plaintiff,<br><br>v.<br><br>MR. OVERMYER, Superintendant, D.F. OBERLANDER, *Deputy Superintendant*, MS. SHEESLEY, PSS, *Individually and in their Official Capacities*,<br><br>    Defendants. | Civil Action No. 19-0003E<br>District Judge Susan Paradise Baxter<br>Magistrate Judge Maureen P. Kelly<br><br>ECF No. 41 and 49 |

## **MEMORANDUM ORDER**

### I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Akeem Hutchinson ("Plaintiff") is an inmate at the State Correctional Institution at Forest ("SCI – Forest") in Marienville, Pennsylvania. Plaintiff has filed this civil rights action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 and alleges that Defendants Mr. Overmyer, Superintendent of SCI – Forest, D.F. Oberlander, Deputy Superintendent, and Ms. Sheesley, a psychologist employed at SCI – Forest, have acted in deliberate indifference to Plaintiff's serious mental health issues by failing to provide necessary treatment and in housing him in the Restricted Housing Unit ("RHU") despite his serious mental illness. Plaintiff alleges these acts violate his rights under the Eighth and Fourteenth Amendments of the United States Constitution. ECF No. 3.

Pending now are two self-styled non-dispositive motions that shall be construed by the Court as Motions for a Preliminary Injunction. First, on September 24, 2019, Plaintiff filed a

1

"Motion for Help." ECF No. 41. In this motion, Plaintiff alleges that he remains in SCI-Forest's RHU and is not receiving mental health treatment despite the deterioration of his mental illness. In addition, Plaintiff claims that he has not been provided showers for over 90 days, has been denied yard time for over 30 days, is being starved by inadequate food portions, and has had his property and legal paperwork removed, lost, or intentionally misplaced. In addition, he claims that staff are retaliating against him with false misconducts, cell searches, and negative comments. As a result, Plaintiff states his life is in danger and his mental health is deteriorating. In addition, Plaintiff states that his release date from DOC custody is in March 2020, and that he needs mental health treatment and assistance with his transition back into society. Id. Accordingly, Plaintiff seeks this Court's assistance in obtaining appropriate care during his remaining months in DOC custody.

On September 25, 2019, this Court ordered Defendants to respond to Plaintiff's Motion for Help. ECF No. 45. Defendants filed their response on October 8, 2019, and provided the Court with detailed information disputing each of Plaintiff's allegations as to the denial of mental health treatment, showers, and yard time. ECF No. 48.

Based upon the evident conflicts raised by Defendants' response and the serious nature of Plaintiff's allegations, this Court scheduled a hearing for October 23, 2019, and required Plaintiff to appear by video. ECF No. 46.

Thereafter, Plaintiff filed a "Motion for the Court to Listen/Motion to Get Sent to a Mental Health Hospital for Mental Health Treatment." ECF No. 49. In this second motion, Plaintiff alleges that since filing his Motion for Help, staff at SCI-Forest have been retaliating against him and threatening him with discipline if he persists in filing complaints with the Court. Id.

Also pending before the Court is Defendants' Partial Motion to Dismiss, filed on May 24, 2019. ECF No. 17. Plaintiff's response was due July 15, 2019. ECF No. 21. As of September 11, 2019, Plaintiff had not filed a response to the Partial Motion to Dismiss, and this Court entered an Order to Show Cause, requiring Plaintiff to respond by October 1, 2019, and show why the motion should not be granted due to Plaintiff's failure to file his response as previously ordered. ECF No. 38. As of this date, Plaintiff has not filed a response to the Order to Show Cause, or Defendants' Partial Motion to Dismiss.[1]

The hearing on Plaintiff's pending motions occurred on October 23, 2019. Plaintiff appeared by video, accompanied by Kevin Cowan, a Psychology Services Specialist; Captain William Gill, the RHU administrator; and three corrections officers. Plaintiff's personal hygiene appeared to be appropriate, and his clothing was clean. The Court determined that he was able to understand and appropriately respond to questions posed. Accordingly, the Court directed the parties to address each issue presented in Plaintiff's motions, which are resolved as follows.

### 1. Showers

Plaintiff concedes that while housed in general population or in the RHU, showers are available. However, he has chosen not to participate because he is afraid of retribution from guards or other inmates. Plaintiff states he screams and kicks his cell door for hours each day and so is afraid that other inmates will retaliate by throwing feces on him while showering. In addition, Plaintiff states there are times when he loses shower privileges because guards will state he has his cell window covered or is not ready when required.

---

[1] By Order dated October 23, 2019, Plaintiff was directed to file his response by November 13, 2019, and notified that the failure to do so will result in the recommendation that the Partial Motion to Dismiss be granted. ECF No. 52.

3

Captain Gill testified that the showers in the RHU are individual stalls and have doors, so that each inmate showers alone. He has ordered Plaintiff to take a shower on at least one occasion when it was clear that his personal hygiene was not within acceptable bounds, and stated that Plaintiff has access to a sink in his cell and routinely performs "bird baths." Plaintiff had previously requested a cell with a shower to accommodate his anxiety. However, when this privilege was recently granted, Plaintiff dismantled a portion of the in-cell shower and removed screws that he later ingested. The walls of in-cell showers are metal, and Plaintiff would bang on them, creating loud echoes that disturbed inmates and guards on the cell block. Accordingly, staff continue to offer Plaintiff access to a shower in the RHU three times per week, but Plaintiff declines and opts to use his sink to maintain personal hygiene.

### 2. Yard Time

Plaintiff is offered yard time for one hour per day, five days per week. However, as with showers, Plaintiff declines to participate because he is afraid to be outside of his cell in the presence of other inmates, who he believes will throw feces at him. Captain Gill testified that RHU inmates attend yard in individual outdoor blocks, separated by fencing. All inmates are searched before entering the yard, and inmates with known conflicts are separated throughout the 200-foot divided yard. He is aware of a recent incident when an inmate defecated in the yard and threw it at another inmate, but this conduct has not been directed at Plaintiff. That inmate was disciplined with the loss of yard privileges for some time. As with showers, staff continue to offer Plaintiff yard time, but Plaintiff declines this opportunity to get out of his cell.

### 3. RHU Lockdown Conditions

Plaintiff is currently housed in the RHU on administrative custody status because he has threatened to carry a weapon if released to general population, but he can be released to general

4

population once he renounces his intention to violate prison regulations and is otherwise not subject to disciplinary custody.

Plaintiff alleges that he is maintained on 24-hour lockdown in solitary confinement. Plaintiff concedes that he has access to showers and yard but is afraid to leave his cell for either. Plaintiff contends that he is denied access to the law library and has not been offered psychology services outside of his cell. As a result, he states he is isolated 24 hours each day.

Captain Gill reiterated that even though Plaintiff is in the RHU, he has the option to attend yard and take showers outside of his cell. In addition, he is allowed law library time, but only signed up on one occasion since his August placement in the RHU.

### 4. Food

Plaintiff alleges that he has been deprived of meals, receives small portions when meals are provided, but guards routinely remove food from his tray. Plaintiff states that since August 14, 2019, he has been denied meals on nine occasions. Captain Gill testified that at mealtimes, a bell is rung, and inmates are to be at their door ready to receive the food tray through the "pie hole." Plaintiff has often been combative and kicked on the cell door. Because his aggressive behavior may present a danger of an officer passing a food tray through a wicket, Plaintiff is deemed to have declined a meal on these occasions. Captain Gill noted, however, that Plaintiff is in administrative custody and so has commissary privileges. Accordingly, he can purchase snacks to supplement his meals.

### 5. Law Library

Plaintiff alleges he has been denied access to the law library and even if granted, is not fully capable of utilizing the library due to his inability to read or write. Plaintiff states that he has not been offered assistance in pursuing this lawsuit by a librarian or other prison staff, and other

5

inmates who may have helped him are no longer available. Plaintiff concedes he has requested law library access only once since August 14, 2019.

Captain Gill testified that RHU inmates are permitted to submit a request for law library time three to five times per week, and time is made available based on the number of requests and slots. Plaintiff has submitted only one request since August 14, 2019, but he may attend the law library if he follows the applicable procedures. In addition, on September 23, 2019, Plaintiff attended law library, and assistance was requested on his behalf. ECF No. 48-1 at 51-2.

The Court notes that Plaintiff has demonstrated an ability to read and write, as evidenced by his numerous filings in this case.

### 6. Retaliation by Staff in the RHU

Plaintiff alleges that staff threaten him with discipline because of his litigation. On October 1, 2019, Theresa Skillman ("Skillman"), a counselor at SCI – Forest, came to his cell door to address his allegation that he had been denied showers. Plaintiff states that she informed him that if he "keeps it up, it will get bad" for him. In addition, Captain Gill threatened he would "get street charges" if he failed to comply with their demands. Plaintiff further alleges that during a two-week transfer to the Allegheny County Jail in June 2019, all of his legal documents, multiple pairs of tennis shoes, a music tablet and headphones were taken by guards and not returned to him. Plaintiff believes this was retaliatory because he complains and has filed suit. Plaintiff has provided a copy of a grievance dates July 11, 2019, and his DC-135A "Inmate's Request to Staff Member" dated August 29, 2019, complaining that upon his return from the Allegheny County Jail, his property was not returned. Plaintiff listed his missing property as shower shoes, pictures, legal work, hygiene products, books and magazines. ECF No. 41-2 at 1, 5. In this regard, it is apparent the

Plaintiff did not complain that tennis shoes, a music tablet, or headphones were missing or not returned until his appearance in Court today.

Captain Gill testified that the "street charges" reference was in response to Plaintiff's threats to staff and other inmates. Plaintiff has made veiled threats of force upon his release in March 2020, and Captain Gill explained that such threats could subject him to criminal charges. Captain Gill also testified that he has not received any information or grievances regarding alleged retaliation against Plaintiff and he has not witnessed any such behavior.

### 7. Mental Health Treatment

Plaintiff states he suffers from paranoia, bipolar disease, anxiety, and depression and that because of his conditions, he is not sleeping and spends hours of each day screaming and kicking his cell door. Plaintiff refuses to shower or attend yard time because of his paranoia and anxiety, and he has suicidal thoughts and self-mutilates or bangs his head frequently. Plaintiff contends he is not receiving appropriate mental health treatment for his obvious serious mental illness. He contends that a psychology services specialist sees him once or twice per month at his cell door, but talks down to him, and he has not been seen by a psychiatrist in 90 days. Plaintiff is assigned to Kevin Cowan ("Cowan"), a psychology services specialist, who he believes is related to a guard at SCI-Greene that he successfully charged with professional misconduct. As a result, he believes Cowan is retaliating against him by failing to provide necessary treatment. He has been prescribed Haldol to be delivered by injection once per month, however, he does not believe this drug is appropriate for his condition and so has rejected treatment.[2] Plaintiff has requested medication that is appropriate for his illness, but nothing has been prescribed to help him.

---

[2] Haldol is the brand name for Haloperidol, a drug used to treat schizophrenia, and control motor and verbal tics. When prescribed by injection, Haloperidol is usually given once every four weeks. https://medlineplus.gov/druginfo/meds/a615023.html

7

Cowan testified that Plaintiff is diagnosed with Antisocial Personality Disorder and has a "C" Code, indicating he is on the DOC active mental health roster. A "D" Code indicates a serious mental health disorder, and Plaintiff's diagnosis does not merit this code. "C" Code inmates typically receive monthly counseling with a psychologist and are seen and treated by a psychiatrist once every 120 days. However, Plaintiff has had fourteen psychologist contacts in the past 90 days, but often refuses to discuss his issues or be seen. He frequently refuses to leave his cell for treatment, most recently on October 21, 2019, and deflects or threatens psychology staff. While Plaintiff would like to be placed in a special housing residential treatment program, he is not eligible because of his diagnosis, his history of violence, and his manipulative behavior. Inmates housed in these units are particularly vulnerable and severely mentally ill. According to Cowan, Plaintiff has a behavioral diagnosis. He has and can control his behavior but will act out or threaten self-harm to manipulate staff and his living conditions.

Counselor Skillman has been assigned to Plaintiff on several occasions. Skillman has explained to Plaintiff that social workers are available to assist him in planning for his release in March 2020, but "he refuses to cooperate or take simple steps to obtain help." ECF No. 48-1 at 47. In addition, Plaintiff has repeatedly threatened Skillman with accusing her of sexual harassment, making it necessary for her to be accompanied by security personnel for counseling sessions. Id. 48-1 at 30.

The Court has also reviewed Plaintiff's mental health records for the past two years, which have been provided to the Court for in-camera review. It is apparent that Plaintiff was seen on July 9, 2019, by a psychiatrist and reported that he was suffering from poor mental health and requested that he be moved to a special housing unit. Plaintiff was unable to describe any symptoms and refused medication because he did not want to attend a "pill line" or receive

8

medication that wouldn't help. Plaintiff was noted to be "demanding, entitled and confrontational," with poor insight and judgment, but not otherwise impaired or distressed. He was logical and goal oriented, but angry that he was not recommended for housing placement in his preferred unit. Id. at 2-5.

Plaintiff had his annual Z code review for single cell housing on July 24, 2019, and was angered that staff determined there was no psychiatric indication for a Z code. This prompted Plaintiff to make statements that were deemed threatening, "I know what you're doing. I'm a wolf. You're all out to get me. I get out in seven months. You'll see." Id. at 7. However, Plaintiff has had times when he has engaged with psychology staff and responded to offers of assistance and medication. Treatment goals include impulse control, anger management, and transition services.

Finally, Plaintiff's records show that for the period July 3, 2019 through August 14, 2019, Plaintiff was in a general population unit, able to schedule showers at one of two times per day, seven days per week. ECF No. 48. On August 14, 2019, Plaintiff was issued a misconduct for possessing weapons consisting of a padlock wrapped in a sheet and a piece of metal with a handle fashioned from cloth. He was found guilty and sanctioned to 30 days of disciplinary custody. Id. On September 12, 2019, Plaintiff's disciplinary sanction expired, but he threatened to always carry a weapon once he returned to general population. Accordingly, Plaintiff was placed on administrative custody status and remains in the RHU.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 65, as well as the case law interpreting this rule, provide that in order to obtain a preliminary injunction, a plaintiff must demonstrate a reasonable likelihood of ultimate success on the merits; that irreparable harm would result if the relief sought is not granted; that the issuance of the injunctive relief would not result in greater harm to the nonmoving

party; and that the public interest would best be served by granting the relief sought. Campbell Soup Co. v. Conagra, Inc., 977 F.2d 86, 90-91 (3d Cir. 1992). Thus, "[t]o obtain a preliminary injunction, the moving party must demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." Hohey v. Casey, 868 F.2d 69, 72 (3d Cir. 1989), cert. denied, 493 U.S. 848 (1989).

## III. DISCUSSION

### A. Food and Privileges

Despite the content of his pleadings and motions filed with the Court, Plaintiff concedes he has had access to showers, food, yard time, and law library, but is opting to remain in his cell because of anxiety and fear of retaliation. Under these circumstances, Plaintiff has not established that he is entitled to injunctive relief as to these items.

### B. Mental Health Treatment

Based upon the evidence presented by the parties, Plaintiff has not established that he is entitled to a Court Order requiring his placement in a mental health facility at this time as requested in the pending motions. Based on the record before it, including Plaintiff's testimony and demeanor, the Court is unable to determine whether his conduct (manipulative behavior) is sufficiently within his control as alleged by SCI-Forest representatives or, whether, given his acknowledged history of self-harm, his present housing and mental health treatment constitutes deliberate indifference to his serious medical need for mental healthcare, warranting immediate relief by granting Plaintiff's pending motions for injunctive relief. Palakovic v. Wetzel, 854 F.3d 209, 228-29 (3d Cir. 2017)(providing guidance on the issue of deliberate indifference to serious mental health needs).

10

Therefore, for purposes of determining the merits of his pending motions and the merits of the claims asserted in his Complaint related to mental health treatment, the Court deems it necessary that Plaintiff undergo a psychiatric evaluation. See, Boyd v. Werner, 416 F. Supp. 1222, 1224 (W.D. Pa. 1976) (after hearing on motion for preliminary injunction challenging, inter alia, alleged failure to treat mental health illness by placing plaintiff in a mental health facility, Court ordered psychiatric examination to "facilitate a determination of the complaint"). Defendants are directed to schedule an independent examination by a board-certified psychiatrist to be completed within 60 days and provide the Court with a report addressing the identified concerns.

An appropriate Order follows.

## ORDER

AND NOW, this 28th day of October, 2019, upon consideration of Plaintiff's Motion for Help, ECF No. 41, and Motion for the Court to Listen/Motion to get sent to a Mental Health Hospital for Mental Health Treatment, ECF No. 49, Defendants' Brief in Opposition, ECF No. 45, Defendants' Exhibits thereto, ECF No. 48, and the testimony presented in the hearing of this matter on October 24, 2019, and for the reasons set forth in the accompanying Memorandum,

IT IS HEREBY ORDERED that the two pending motions, ECF Nos. 41 and 49, are denied as they relate to the alleged denial of showers, yard time, food, lockdown conditions, law library access, and retaliation. As to the remaining allegations of the denial mental health treatment, the Court defers ruling. Defendants shall schedule and provide an independent psychiatric

examination of Plaintiff and submit a report of the examination, specifically to address the concerns identified by this Court.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM/ECF

Akeem Hutchinson
KP-4715
SCI – Forest
PO Box 945
Marienville, PA 16239